IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JIMMIE SHORT, SR. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-cv-382-JPG-CJP |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant.[1] | ) |

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Jimmie Short, Sr. seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423 (Doc. 1).

## Procedural History

Plaintiff filed for DIB on May 1, 2013, alleging a disability onset date of October 10, 2011. (Tr. 142-43.) He later amended his onset date to March 1, 2013. (Tr. 156.) Plaintiff's claim was denied initially and again upon reconsideration. (Tr. 81-84, 90-92.) Plaintiff requested an evidentiary hearing, which Administrative Law Judge (ALJ) Richard N. Staples conducted in February 2016. Following the hearing, ALJ Staples issued an unfavorable decision in March 2016. (Tr. 15-33.) The Appeals Council denied review, rendering the ALJ's decision the final agency decision. (Tr. 1-6.) Plaintiff exhausted his administrative remedies and filed a timely complaint with this Court. (Doc. 1).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (visited Feb. 7, 2017). She is automatically substituted as defendant in this case. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity ("RFC") and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008); *accord Weatherbee v. Astrue*, 649 F.3d 565, 568-69 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984); *see also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. . . . If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*,

3

55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The ALJ's Decision

ALJ Staples followed the five-step analytical framework set forth above. He determined plaintiff met the insured status requirements through December 31, 2016, and had not engaged in substantial gainful activity since March 1, 2013. ALJ Staples further found that plaintiff had the RFC to perform sedentary work, except that he could never climb ladders, ropes, or scaffolds; never work at unprotected heights or around dangerous machinery; not work around dust, fumes, gases, or similar pulmonary irritants; not work in extremely hot or cold temperatures or in extreme humidity; and was limited to occasional climbing of ramps or stairs and occasional balancing, stooping, kneeling, crouching, and crawling. (Tr. 20-21.)

The ALJ then determined plaintiff was unable to perform any past relevant work but was not disabled because jobs existed in the national economy that plaintiff could perform. (Tr. 27-29.)

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to plaintiff's

argument.

1. **Agency Forms**

In his disability report, plaintiff alleged that congestive heart failure, high blood pressure, and high cholesterol prevented him from maintaining employment. (Tr. 168.) He stated he experienced associated symptoms of difficulty breathing exacerbated by activity; tingling and numbness in his right hand; swelling in his legs; muscle spasms in both of his hands; decreased appetite; loss of balance; frequent urination; shakiness; dizziness; blurred vision; trouble concentrating and remembering; weakness; and fatigue. (Tr. 175.)

In his initial function report from July 2013, Plaintiff was reportedly unable to sit, stand, or walk for extended periods; climbed stairs slowly; and could not lift or carry heavy items or perform repetitive lifting. Plaintiff indicated his conditions made it difficult to cook, clean, dress, and sleep. His doctor restricted him from driving. Plaintiff cared for his children by driving them around and overseeing them. He also let his dog outside, swept floors three to four times each week, and grocery shopped once or twice each week. Plaintiff's son and girlfriend help him with these responsibilities. Plaintiff slept with his feet propped up to alleviate swelling. He napped on and off throughout the day. Plaintiff reported sleep apnea but "would not be able to stand having a mask on [his] face for the sleep study." (Tr. 178-82.)

In a later dated function report from April 2014, plaintiff stated his girlfriend helped him shower and dress. He no longer prepared meals, grocery shopped, or helped care for his children or dog. (Tr. 203-09.)

Petitioner's girlfriend, Carla Crews, stated in a letter that plaintiff could not lift any heavy items without pain and needed help showering and dressing. Plaintiff also experienced daily swelling in his legs and pain when breathing. (Tr. 234.)

### 2. Evidentiary Hearing

ALJ Staples conducted an evidentiary hearing in February 2016. (Tr. 34-53.) Plaintiff's attorney stated that plaintiff underwent a coronary bypass in March 2013. He experienced consistent swelling in his legs thereafter, which required plaintiff to elevate his legs over his heart level throughout the day. (Tr. 38.)

Plaintiff testified he weighed somewhere between 250 and 260 pounds and was 5' 7" tall. (Tr. 41.) If plaintiff did not prop up his legs, they swelled. He elevated his legs five or six times per day for a half-an-hour to forty-five minutes at a time. Plaintiff took a water pill twice per day. (Tr. 45-46.)

A vocational expert also testified at the hearing. She opined there were no jobs available to a person with the ultimate RFC finding who also had to elevate his legs three or more times each day for a half-an-hour at a time. (Tr. 50-52.)

### 3. Medical Records

Plaintiff's medical records reflect a history of congestive heart failure, asthma, and leg edema. Throughout the relevant period, plaintiff received prescriptions for albuterol, aspirin, Lisinopril, Proventil, Naprosyn, Naproxen, Lasix, potassium chloride, metoprolol, nitrogylcerin, Plavix, hydrocodone, simvastatin, Symbicort, tramadol, Flexeril, and Zocor.

On March 7, 2013, plaintiff presented to family nurse practitioner Susan Lutjens for a medication refill and asthma problems. She noted the edema in plaintiff's lower extremities had improved but instructed him to elevate his legs above the heart "as much as possible." (Tr. 385.)

Plaintiff was referred to Dr. Omar Almousalli for cardiac evaluation due to shortness of breath and leg edema. On March 22, 2013, Dr. Almousalli assessed plaintiff with congestive heart failure, atypical chest pain, possible hyperlipidemia, and obstructive sleep apnea. He noted

6

no edema on examination. Dr. Almousalli increased plaintiff's Lasix, a medication used to treat water retention in individuals with congestive heart failure,[2] and planned a stress echocardiogram to look for structural heart disease and ischemia. (Tr. 478.) The stress echocardiogram was positive and suggested coronary artery disease. (Tr. 477.)

On March 29, 2013, plaintiff was admitted to Memorial Hospital for chest pain and shortness of breath. He received diagnoses of unstable angina, severe three-vessel coronary artery disease, hypertension, hypercholesterolemia, obesity, and ongoing tobacco abuse. Plaintiff underwent a coronary artery bypass grafting on April 1, 2013. He was discharged on April 10, 2013, and instructed not to smoke, lift greater than ten pounds for three months, or drive for one month. (Tr. 255-59.)

On April 23, 2013, plaintiff followed up with Dr. Almousalli, who noted 1+ edema. Dr. Almousalli instructed plaintiff to continue his Lasix and participate in cardiac rehab. (Tr. 472-73.)

On May 7, 2013, plaintiff presented to Dr. John Sadoff at Cardiothoracic Surgery Associates, P.C. Plaintiff reported he quit smoking and had no complaints. Dr. Sadoff noted no pedal edema. Plaintiff "made satisfactory post-operative progress" and Dr. Sadoff advised him to follow-up as needed. (Tr. 324.)

On May 9, 2013, plaintiff presented to Dr. Kashif Bhutto at Pulmonary Physicians of Southern Illinois for a follow-up visit. Dr. Bhutto opined plaintiff was "doing well" and he noted no edema. Dr. Bhutto assessed plaintiff with snoring and an obesity profile suggesting obstructive sleep apnea; a history of asthma; dyspnea; and coronary artery disease, status post coronary artery bypass grafting. He referred plaintiff to a sleep clinic, recommended pulmonary function testing, and instructed plaintiff to follow up in three months. (Tr. 331-32.)

---

[2] DRUGS.COM, *Lasix*, https://www.drugs.com/lasix.html (visited Jan. 26, 2018).

On June 4, 2013, plaintiff presented to Dr. Almousalli with mild leg swelling. Dr. Almousalli noted 1+ edema on examination. He suggested exercise, sodium restriction, and a sleep study. (Tr. 459.)

On June 5, 2013, plaintiff presented to Dr. Abdulsalam Jamous for a sleep consultation. Dr. Jamous noted no edema. Dr. Jamous assessed plaintiff with excessive daytime sleepiness, morbid obesity, insomnia, parasomnia, and hypertension. (Tr. 341-43.)

Dr. Vittal Chapa evaluated plaintiff on August 8, 2013. Dr. Chapa reported 1+ edema in plaintiff's legs. Dr. Chapa assessed plaintiff with chronic lumbosacral pain syndrome, coronary artery disease, and asthma. (Tr. 344-46.)

On August 26, 2013, plaintiff followed up with Dr. Bhutto, who noted "no edema" on physical examination. Dr. Bhutto recommended proceeding with a methacholine challenge test to evaluate plaintiff for asthma and following-up with the sleep clinic. (Tr. 398-99.)

On September 5, 2013, plaintiff underwent a lower extremity venous duplex for lower extremity edema. The exam showed no evidence of deep venous thrombosis. (Tr. 413.)

On September 11, 2013, Dr. Bhutto examined plaintiff and noted "at least 2+ edema." A scan of plaintiff's chest showed no evidence of pulmonary emboli but there was a note of persistent separation of plaintiff's sternum. Dr. Bhutto decreased plaintiff's Advair and encouraged him to lose weight. Plaintiff indicated he would not wear a CPAP machine. (Tr. 396-97.)

On September 25, 2013, plaintiff presented to Dr. Almousalli with mild leg swelling and chest pain. Dr. Almousalli noted 1+ edema. He ordered a stress echocardiogram and prescribed Lasix for the edema. (Tr. 458.)

Plaintiff followed up with Dr. Bhutto on October 16, 2013. Dr. Bhutto noted no edema on

physical examination. Plaintiff's methacholine challenge test was positive. (Tr. 394-95.)

Plaintiff presented to physician assistant (PA) Sarah Rahman on October 17, 2013. She assessed plaintiff with edema and instructed him to elevate his legs three times each day for thirty-minute increments. (Tr. 381-84.)

On November 19, 2013, plaintiff followed-up with Dr. Almousalli and complained of leg edema. Dr. Almousalli noted 3+ edema and increased plaintiff's Lasix dosage. He also prescribed plaintiff potassium chloride. (Tr. 456.)

On January 29, 2014, PA Rahman assessed plaintiff with lower extremity edema and instructed plaintiff to elevate his legs above heart level thirty minutes a day three times per day. (Tr. 377-80.)

Plaintiff presented to Dr. Bhutto on February 18, 2014. Dr. Bhutto found "trace edema" on physical examination. Dr. Bhutto counseled plaintiff on smoking cessation, advised him to take his inhalers, referred plaintiff to the sleep clinic, and arranged a formal consultation with plaintiff's thoracic surgeon, Dr. Sadoff, regarding plaintiff's sternum separation. (Tr. 392-93.)

On March 4, 2014, plaintiff presented to Dr. Sadoff, who noted 1+ edema. Dr. Sadoff discussed exploration and debridement of plaintiff's sternum. Plaintiff declined the procedure. Dr. Sadoff suggested smoking cessation, exercise, and weight-loss. (Tr. 424-25.)

Plaintiff attended a cardiac follow-up with Dr. Hadid on March 17, 2015. Dr. Hadid noted 2+ edema. He suggested a heart healthy diet and counseled plaintiff on tobacco-abuse. He also prescribed plaintiff Lasix. (Tr. 447-50.)

Plaintiff followed up with Dr. Hadid on April 7, 2015. He reported his leg swelling was about the same. Dr. Hadid reported 2+ edema on examination. Plaintiff's assessment remained unchanged, with the exception of improved chest pain. Dr. Hadid increased plaintiff's Lasix and

9

repeated his instructions for exercise, sodium restriction, and smoking cessation. (Tr. 451.)

Plaintiff underwent a stress echocardiogram on April 20, 2015, which demonstrated mild exercise impairment. (Tr. 442.)

On April 30, 2014, plaintiff presented to Dr. Almousalli with complaints of leg edema. Dr. Almousalli noted 3+ edema and suggested a heart-healthy diet and weight loss. Plaintiff also received a refill for Lasix. (Tr. 455.)

Plaintiff presented to PA Rahman on May 29, 2014. She found no edema on exam. (Tr. 428-30.)

In April 2015, plaintiff presented to Dr. Hadid with 2+ edema. Dr. Hadid counseled plaintiff on tobacco use, advised him to follow a heart-healthy diet, and suggested exercise and sodium restriction. Dr. Hadid also refilled plaintiff's Lasix and potassium and planned a stress echocardiogram. (Tr. 443-45.)

On May 6, 2015, plaintiff presented to Dr. Hadid, who noted 2+ edema on examination. (Tr. 440-41.) Plaintiff underwent a left heart catheterization and was instructed to return in four weeks to discuss the results. Dr. Hadid counseled plaintiff on tobacco cessation and suggested weight-loss and exercise, along with sodium restriction.

On October 26, 2015, Dr. Almousalli noted 2+ edema. He suggest plaintiff lose twenty pounds and resume aspirin. Dr. Almousalli refilled plaintiff's Lasix prescription. (Tr. 439.)

### 4. State-Agency Consultations

On September 5, 2013, Dr. Gotway conducted an RFC assessment of plaintiff. Dr. Gotway determined plaintiff could occasionally lift and/or carry ten pounds; frequently lift and/or carry less than ten pounds; stand and/or walk for a total of two hours and sit for a total of about six hours in an eight-hour workday. Plaintiff could occasionally climb ramps and stairs; balance;

10

stoop; kneel; crouch; and crawl. He could never climb ladders, ropes, or scaffolds. Plaintiff should also avoid concentrated exposures to extreme heat and cold, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards. (Tr. 59-60.)

Dr. B. Rock Oh conducted an RFC assessment on May 20, 2014, and concurred with Dr. Gotway's RFC assessment. (Tr. 71-73.)

## Analysis

Plaintiff argues the ALJ erroneously failed to provide "good" reasons for discounting PA Rahman's opinion that plaintiff needed to elevate his legs throughout the day.

Under Social Security Ruling (SSR) 06-03p, physician assistants are not "acceptable medical sources" who can establish whether a claimant has a medically determinable impairment.[3] SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). However, their insight may provide valuable information regarding the severity of a claimant's impairments and functional ability. *Id.* at *3. Thus, an ALJ may evaluate a PA's opinion considering the following factors: the length of the treatment relationship; whether the opinion is consistent with other evidence; the degree to which the source supports and explains the opinion; and whether the source has a specialty related to the claimant's impairments. *Id.* at *4; *Phillips v. Astrue*, 413 F. App'x 878, 884 (7th Cir. 2010).

Here, ALJ Staples cited the above factors and summarized PA Rahman's treatment records. The ALJ ultimately afforded "little weight" to her instruction that plaintiff should elevate his legs three times a day for thirty-minutes at a time. He cited several reasons for his decision. PA Rahman's notes are dated roughly six and nine months after plaintiff's coronary bypass surgery, which took place in April 2013. Neither she nor any treating or examining physician repeated the recommendation in later medical records. Therefore, the ALJ opined, no evidence suggests

---

[3] The new regulations list a "[l]icensed Physician Assistant for impairments within his or her licensed scope of practice" as an "acceptable medical source." 20 C.F.R. § 416.902(a)(8) (2017). However, the definition applies only to claims filed on or after March 27, 2017.

the limitation is "ongoing." Moreover, the ALJ pointed out that PA Rahman did not specifically require plaintiff to elevate his legs during the workday. Finally, ALJ Staples noted that an RFC assessment is an issue reserved to the Commissioner, and PA Rahman's opinion is therefore not entitled to special weight.

The ALJ's analysis indicates he considered factors such as supportability, consistency, and the degree to which PA Rahman explained her opinion. Although the ALJ did not expressly address every factor in weighing PA Rahman's opinion, he met his burden to "minimally articulate" his reasoning for rejecting the evidence. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). The Seventh Circuit has upheld ALJ decisions where the ALJ did not explicitly address all of the factors. *See Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013) (stating "while the ALJ did not explicitly weigh each factor in discussing [the treating physician's] opinion, his decision makes clear that he was aware of and considered many of the factors. . . ."); *Elder v. Astrue*, 529 F.3d 408 (7th Cir. 2008) (finding ALJ did not err even though he addressed only two of the six factors); *Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012) ("The ALJ did not explicitly weigh every factor while discussing her decision to reject [the treating source's] reports, but she did note the lack of medical evidence supporting [the] opinion . . . and its inconsistency with the rest of the record."). Moreover, SSR 06-03p states that the factors "*can* be applied to opinion evidence from 'other sources,'" 2006 WL 2329939, at *4 (emphasis added), but does not require an ALJ to evaluate "other source" opinions against the factors.

Plaintiff also argues the medical evidence contradicts the ALJ's conclusion that there is no ongoing need for plaintiff to elevate his legs. Plaintiff cites other physicians' findings of edema during physical examinations as well as Ms. Lutjen's instructions for plaintiff to elevate his legs.

ALJ Staples acknowledged the consistent findings of edema throughout the record.

12

Furthermore, the ALJ correctly stated that no other medical source suggested leg elevation after PA Rahman rendered her opinion. Like physician assistants, nurse practitioners such as Ms. Lutjen are not acceptable medical sources. Moreover, Ms. Lutjen's opinion is dated March 2013, prior to plaintiff's coronary bypass and before PA Rahman opined the same.

Plaintiff also disagrees with the ALJ's determination that PA Rahman's leg-elevation restriction would not interfere with the workday. Plaintiff argues "it is most rational to assume [plaintiff] would elevate his legs during work hours."

On review the Court cannot "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The Court only determines whether the ALJ's opinions are founded on substantial evidence. *Id.* Here, the ALJ's determination rests on substantial evidence.

Plaintiff also contests the ALJ's statement that PA Rahman's opinion was an issue reserved to the Commissioner. The ALJ opined that "[a] treating source opinion on an issue reserved to the Commissioner is never entitled to controlling weight or special significance." According to SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996), an RFC determination is an administrative finding and not a medical opinion. However, PA Rahman's opinion that plaintiff needed to elevate his legs does not constitute an RFC assessment. An RFC assessment, for example, is that a claimant cannot perform sedentary work. *Collins v. Astrue*, 324 F. App'x 516, 520 (7th Cir. 2009). In contrast, PA Rahman's opinion concerns plaintiff's physical restrictions, which is not an issue reserved to the Commissioner. *Id.*

Nonetheless, the ALJ's improper application of the ruling is harmless. He still evaluated PA Rahman's opinion and built a logical bridge between the evidence and his decision to afford the

opinion little weight. Moreover, a PA's opinion is, in fact, not entitled to special or controlling weight under the regulations. The regulations define a "treating source" as an "acceptable medical source" who has provided a claimant with medical treatment. 20 C.F.R. § 416.927(a)(2). As stated above, a physician assistant is not an "acceptable medical source." SSR 06-03p, 2006 WL 2329939, at *2. Thus, any error here was harmless.

Finally, plaintiff argues the ALJ improperly pointed out that plaintiff ignored PA Rahman's advice to diet and quit smoking. The Seventh Circuit has opined that even when evidence establishes a link between smoking and a claimant's symptoms, ALJs should be cautious to undermine a claimant's credibility due to a failure to quit smoking. *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000). Moreover, although an ALJ can draw negative inferences from non-compliance with medical treatment, the ALJ must first explore the claimant's explanation for failing to follow medical advice. *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008).

The ALJ's statement, however, relates to the ALJ's credibility determination of plaintiff, which plaintiff does not contest. Any improper inferences drawn from plaintiff's failure to diet or quit smoking do not weigh on PA Rahman's credibility as a physician. Thus, any error, here, is again harmless. "[W]e will not remand a case for further specification when we are convinced that the ALJ will reach the same result." *Pepper v. Colvin*, 712 F.3d 351, 267 (7th Cir. 2013).

In sum, substantial evidence supports the ALJ's decision to afford PA Rahman's opinion "little weight." Although the ALJ misapplied the ruling regarding treating source opinions, the error was harmless; PA Rahman is not a treating source and the ALJ still provided sufficient reasons for discrediting her opinion. In addition, the ALJ's reference to plaintiff's smoking and failure to diet is immaterial to his evaluation of PA Rahman's opinion.

Plaintiff also asks this Court to award benefits directly, which is appropriate "only if all

14

factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 356 (7th Cir. 2005). Based on the above findings, the record does not support an award of benefits.

## Conclusion

The Commissioner's final decision denying Jimmie Short, Sr.'s application for social security disability benefits is **AFFIRMED**.

The Clerk of Court is **DIRECTED** to enter judgment in favor of defendant.

**IT IS SO ORDERED.**
**DATE:  February 1, 2018**

                                                      s/ J. Phil Gilbert
                                                    **J. PHIL GILBERT**
                                                    **DISTRICT JUDGE**